Filed 3/10/23  P. v. Gonzalez-Rivas CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>ISMAEL GONZALEZ-RIVAS,<br><br>    Defendant and Appellant. | C095034<br><br>(Super. Ct. No. 19FE012600) |

A jury found defendant Ismael Gonzalez-Rivas guilty of multiple counts of committing a lewd and lascivious act on a child and one count of possessing child pornography.  The trial court imposed a sentence that included the upper term of eight years on one of the counts.  On appeal, defendant claims the court erred when it instructed the jury using CALCRIM Nos. 301 and 1190 and claims the case must be remanded for resentencing because the trial court's imposition of the upper term sentence does not satisfy the new requirements of Senate Bill No. 567 (2021-2022 Reg. Sess.)

1

(Stats. 2021, ch. 731, § 1.3) (Senate Bill 567).  We will correct minor errors in the abstract of judgment but affirm the judgment.

BACKGROUND

Defendant abused the two victims, J.D. and D.D., over the course of several years. Both victims testified at trial, along with police officers who investigated the matter and interviewed defendant.  Defendant abused J.D. when defendant was living with J.D.'s family; J.D. was approximately six years old.  Defendant shared a bedroom with J.D., and J.D.'s parents instructed him to respect defendant because defendant was his elder. Defendant would buy J.D. toys, give him money, and play with him.  Every other night for approximately three years, defendant would sexually abuse J.D.  Among other things, defendant would ask J.D. to touch and lick his genitals.  Defendant also rubbed his penis over J.D.'s "butt cheeks," but did not enter his anus.  J.D. estimated that he and defendant had approximately 100 incidents of mutual masturbation, 100 incidents of oral sex, and 50 incidents of rubbing his buttocks.  J.D. did not tell anyone about the sexual abuse because defendant told him not to, and J.D. did not want to cause problems between his parents.  Defendant eventually moved out of the home.

Defendant then moved in with J.D.'s older brother and his family.  Defendant shared a room with D.D., who was eight years old at the time.  Defendant walked D.D. to school and babysat him when his parents were not home.  Defendant bought D.D. candy and would take him places.  As with J.D., defendant also sexually abused D.D. multiple times over the course of several years.  Defendant rubbed his penis against or between D.D.'s buttocks and engaged in masturbation with D.D.  D.D. estimated that this happened every night over a two-year period.

Later, defendant moved to a different room in the house.  Defendant would tell D.D. to come to his room, where defendant would have adult or child pornography playing.  Defendant would have D.D. mimic the videos.  Defendant also tried to anally penetrate D.D. and had D.D. penetrate him.

2

D.D.'s family eventually moved to a different city. His family would return to town on occasion and stay in the same home as defendant, who would continue his abuse of D.D. D.D. eventually disclosed the sexual abuse to law enforcement and law enforcement later spoke with J.D. Law enforcement searched defendant's home and found sexually explicit images and videos of minors.

Law enforcement also interviewed defendant; the interview, which was in Spanish, was recorded, but the video was not introduced into evidence. In the interview, defendant conceded he had shared a room with D.D. and admitted some sexual contact with D.D., although he stated D.D. started the incidents. Defendant made similar statements about J.D. The jury also heard testimony from an expert on child sexual abuse.

The trial court instructed the jury using CALCRIM No. 301, which instructed the jury that "[t]he testimony of only one witness can prove any fact. Before you conclude that testimony of a witness proves a fact, please carefully review all of the evidence." The court also read CALCRIM No. 1190, stating, "[c]onviction of a sexual assault crime may be based on the testimony of the complaining witness alone." The jury found defendant guilty of 18 counts of lewd and lascivious acts on a child under the age of 14 years old (Pen. Code, § 288, subd. (a)[1]; counts one through eleven and fifteen through twenty-one), three counts of lewd and lascivious acts on a child 14 or 15 years old (§ 288, subd. (c)(1); counts twelve through fourteen), and one count of possession of child pornography (§ 311.11, subd. (a)). The jury also found true allegations that there were multiple victims. (§ 667.61, subds. (e)(4), (j)(2).)

At the sentencing hearing, the trial court discussed the evidence from the trial, noting both victims were abused consistently over a period of years and stating that the

---

**1** Undesignated statutory references are to the Penal Code.

3

number of charges in the case was conservative, given the conduct. The court continued, "It's not difficult to determine what the appropriate sentence is here based on everything the Court heard. And the sentence is as follows. [¶] As to Count 17 – that will be the principal term on the determinant side – the defendant is sentenced to the upper term. The Court will utilize not only the factors in aggravation presented by the People but also those that are in the probation and sentencing report. [¶] It is no doubt that that is justified. There are lots of counts that weren't even alleged here. But the defendant was in a position of trust. The victims were particularly vulnerable given their ages. The abuse was constant and considerable – I should say persistent, I suppose." For the rest of the determinant counts, the court imposed consecutive sentences of eight months each, for a determinant sentence of 10 years and eight months. The 17 remaining counts received consecutive indeterminate sentences of 15 years to life, for an indeterminant sentence of 255 years to life.

## DISCUSSION

### I

### *Jury Instructions*

Defendant argues it was improper to instruct the jury with CALCRIM No. 1190, in conjunction with CALCRIM No. 301, because doing so reduced the prosecution's burden in that it invited the jury to give extra weight to the victims' testimony. Defendant acknowledges that he failed to object to the instruction at trial and that the California Supreme Court has approved similar instructions but asks us to reach the issue and reverse his convictions because the Supreme Court's opinions "should be reconsidered." Even assuming defendant's claim was not forfeited, however, we must decline his invitation to ignore controlling case law. (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

As both parties note, the Supreme Court previously addressed this issue in *People v. Gammage* (1992) 2 Cal.4th 693. In *Gammage*, the Supreme Court considered CALJIC

4

instructions which were substantially similar to the instant instructions. (*Gammage*, at pp. 696-697.) The defendant argued giving both instructions created a preferential credibility standard for the complaining witness. (*Ibid.*) The Supreme Court disagreed: "Although the two instructions overlap to some extent, each has a different focus. CALJIC No. 2.27 focuses on how the jury should evaluate a fact (or at least a fact required to be established by the prosecution) proved solely by the testimony of a single witness. It is given with other instructions advising the jury how to engage in the *fact-finding* process. CALJIC No. 10.60, on the other hand, declares a substantive rule of law, that the testimony of the complaining witness need not be corroborated. It is given with other instructions on the legal elements of the charged crimes." (*Id.* at pp. 700-701.)

The trial court rejected the defendant's assertion that the instructions created a preferential credibility standard for the complaining witness or suggested the witness was entitled to special deference: "The one instruction merely suggests careful review when a fact depends on the testimony of one witness. The other tells the jury there is no legal corroboration requirement. Neither eviscerates or modifies the other . . . [Citation.] . . . [Citation.] The instructions in combination are no less correct, and no less fair to both sides, than either is individually." (*People v. Gammage, supra*, 2 Cal.4th at p. 701.)

The same reasoning applies here. CALCRIM No. 301 provides that the testimony of only one witness is necessary to prove any fact but cautions that the jury must carefully review all the evidence. CALCRIM No. 1190 provides that the conviction of a sexual assault crime may be based on the testimony of a single witness, the victim. It does not negate the admonition that the jury consider all the evidence, nor does it accord the victim's testimony special deference. We see no error.

## II

### *Senate Bill 567*

Defendant argues Senate Bill 567 applies retroactively to this case and that none of the aggravating factors the trial court cited in sentencing qualify as proper factors on

5

which to base an upper term sentence under section 1170, subdivision (b), as amended. The Attorney General concedes Senate Bill 567 is retroactive but argues any error was harmless. We agree with the Attorney General.

Shortly after defendant was sentenced, Senate Bill 567, effective January 1, 2022, amended section 1170, subdivision (b) to make the middle term the presumptive sentence and placed restrictions on the trial court's discretion to impose an upper term sentence. As relevant here, the trial court may impose the upper term where the facts underlying any aggravating circumstances justifying a sentence exceeding the middle term "have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by a judge in a court trial." (§ 1170, subd. (b)(2).)

We join numerous courts holding that section 1170, subdivision (b), as amended by Senate Bill 567, applies retroactively to cases, like this one, not final on appeal. (See, e.g., *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1108-1109 (*Zabelle*).)

Applying Senate Bill 567, it is undisputed that the facts underlying the aggravating circumstances the trial court relied on at sentencing were not found true beyond a reasonable doubt by a jury or a court in a bench trial. Thus, it was in error under section 1170, subdivision (b), as amended by Senate Bill 567, to impose an upper term based on these aggravating circumstances.

We next consider whether the error was prejudicial, a two-step process to determine whether the error was harmless under (1) the Sixth Amendment; and (2) section 1170, subdivision (b), as amended by Senate Bill 567. (*Zabelle, supra*, 80 Cal.App.5th at p. 1113.)

Under the Sixth Amendment, a fact that exposes defendant to a greater potential sentence must be found true by a jury beyond a reasonable doubt. (*Zabelle, supra*, 80 Cal.App.5th at p. 1110; *Cunningham v. California* (2007) 549 U.S. 270, 281 [166 L.Ed.2d 856, 868].) However, if a reviewing court concludes — applying the

6

standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711], requiring reversal unless the error is harmless beyond a reasonable doubt — that a jury would have found at least a single aggravating factor true beyond a reasonable doubt, a Sixth Amendment error is harmless. (*Zabelle,* at pp. 1111-1112; *People v. Sandoval* (2007) 41 Cal.4th 825, 839.)

Here, the trial court cited explicitly to three separate aggravating factors: defendant was in a position of trust; the victims were particularly vulnerable because of their ages; and the abuse was constant and persistent. We have little difficulty concluding a jury would have found true at least one of these factors beyond a reasonable doubt. The victims both testified they were particularly young when defendant began abusing them. J.D. was six years old when the abuse began, and D.D. was eight years old. And, aside from their ages, the two boys were in a particularly vulnerable position by virtue of their familial relationship with defendant. J.D. was required to share a bedroom with defendant and when J.D.'s parents were not at home, they would leave him in defendant's care. J.D.'s parents also told J.D. he should respect defendant as his elder. D.D. similarly testified he was frequently left alone with defendant during the day, and defendant would walk him to and from school. The evidence also supports the conclusion that defendant's abuse occurred consistently over an extended period of time. Defendant abused both victims hundreds of times over the course of several years. We conclude a jury would have found these aggravating factors true beyond a reasonable doubt. Denial of defendant's right to a jury trial on aggravating circumstances was harmless as a Sixth Amendment violation. (*Zabelle, supra*, 80 Cal.App.5th at p. 1113.)

Turning to the sentencing error under amended section 1170, subdivision (b), we reach a similar conclusion. Here, we apply the standard in *People v. Watson* (1956) 46 Cal.2d 818 for errors involving violations of state law; that is, reversal is required if it is reasonably probable that a result more favorable to the appealing party would have resulted in the absence of error. (*Id*. at p. 836; *Zabelle, supra*, 80 Cal.App.5th at

7

pp. 1110, 1113-1114.)  Thus, while we conclude that the trial court *could* have imposed an upper term based on the aggravating circumstances, we also must consider whether the court *would* have imposed the aggravated term under *Watson*.  (*Zabelle,* at p. 1112.)

The trial court presided over a lengthy trial with extensive testimony from both victims, as well as a police detective who interviewed defendant.  At sentencing, the trial court commented on the victims, saying it found "both to be credible, emotional," and their testimony left little for defense counsel to cross-examine them on.  The court observed that, in view of the testimony, the number of counts charged "pales in comparison to the number of counts that could have been alleged against this defendant. It could have easily reached into the multiple hundreds."  The court then imposed the upper term sentence saying, "[i]t's not difficult to determine what the appropriate sentence is here based on everything the Court heard."  The court also concluded it had "no doubt that that [sentence] is justified" and highlighted the three aggravating factors identified above.  Based on the court's statements, we are satisfied the trial court would have imposed the upper term based on those factors.

Defendant points to the aggravating factors set forth in the probation report and prosecutor's sentencing brief, which go beyond those factors identified at the hearing, and argues they are not all supported by the evidence.  As noted above, however, the harmless error analysis requires only that at least one aggravating factor survive the initial step of the harmless error review.  (*Zabelle, supra*, 80 Cal.App.5th at pp. 1111-1112; *People v. Sandoval, supra*, 41 Cal.4th at p. 839.)  That any other factors laid out in the probation report would not survive the analysis thus does not demonstrate prejudice because it is clear the trial could and would have based its decision on the permissible factors.  The trial court was also required to expressly set forth the reasons for its sentencing decision on the record, and a mere mention of the probation report or the prosecution's sentencing brief does not supplant the trial court's statement of its reasons for the decision.  (Cf. *People v. Fernandez* (1990) 226 Cal.App.3d 669, 678-679 [mere

8

incorporation by reference of factors in a probation report are inadequate to explain the basis for a sentencing decision].) We thus see no prejudice in the trial court's error.

## III

### *Abstract of Judgment*

Although not raised by the parties, we note two errors in the abstract of judgment that warrant correction. First, in section one, the box denoting which term was imposed indicates the trial court imposed the middle term for count seventeen, even though the court imposed the upper term on that count, as discussed above. Similarly, in section nine, the abstract indicates that all fines and fees were waived under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, although the court did not waive the criminal conviction assessment (Gov. Code, § 70373) of $660 or the court operations assessment (§ 1465.8) of $880. Typically, "[w]here there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We will direct the trial court to correct the abstract of judgment.

9

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment that accurately checks the box to reflect the imposition of the upper term sentence for count seventeen and lists the imposed $660 criminal conviction assessment (Gov. Code, § 70373) and $880 court operations assessment (§ 1465.8).  The court shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


_____\s_____,
McADAM, J.*


I concur:


_____\s_____,
KRAUSE, J.

---

*       Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

MAURO, Acting P. J., Concurring and Dissenting.

I fully concur in the majority opinion with the exception of parts II and III, as to which I dissent. In part II, the majority concludes that although the imposition of the upper term sentence does not now comply with the amended statutory requirements of Penal Code section 1170, subdivision (b), the lack of statutory compliance is nevertheless harmless. And in part III, the majority concludes there is a need to correct the abstract of judgment. I disagree.

The trial court sentenced defendant to the upper term without the benefit of Senate Bill No. 567 (2021-2022 Reg. Sess.), which amended Penal Code section 1170, subdivision (b) to provide that a trial court may only impose an upper term sentence if aggravating circumstances are stipulated to by the defendant, have been found true beyond a reasonable doubt, or are based on a certified record of conviction. (§ 1170, subd. (b)(1)-(3); Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) I do not agree that the trial court's findings of aggravating circumstances were harmless given the current statutory requirements. Because I would remand the matter for resentencing, I would not direct the trial court to correct the abstract of judgment.

_____\s_____,
MAURO, Acting P. J.

1